IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KELLY YOUNG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-1144-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Kelly Young, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Young applied for benefits in October 2011, alleging disability beginning on June 30, 2009. (Tr. 14). After holding an evidentiary hearing, ALJ Michael Scurry denied the application for benefits in a decision dated August 26, 2013. (Tr. 14-28). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 11.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ's assessment of plaintiff's residual functional capacity did not include all mental limitations found by the state agency consultant.

2. The ALJ erroneously referred to plaintiff's attorney as a witness.

3. The ALJ failed to resolve plaintiff's objection to Dr. Feinerman's report.

4. The ALJ stated that he gave little weight to Dr. Feinerman's report, but used the report as a basis to deny plaintiff's complaints of manipulative limitations.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th

Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Young was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Scurry followed the five-step analytical framework described above. He determined that Ms. Young had not been engaged in substantial gainful activity since the date of her application. She was last insured for DIB as of December 31, 2014.[3]

The ALJ found that plaintiff had severe impairments of systemic lupus erythematosus, bulging discs at C4-C7, GERD, hypertension, symptomatic renal cyst, chronic kidney disease and lupus nephritis, peptic ulcer, migraine, major depressive disorder, and methamphetamine abuse in remission.[4] He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Young had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with a number of physical and

---

[3] The date last insured is relevant only to the claim for DIB.

[4] "Systemic lupus erythematosus (SLE) is an autoimmune disease in which the body's immune system mistakenly attacks healthy tissue. It can affect the skin, joints, kidneys, brain, and other organs." https://www.nlm.nih.gov/medlineplus/ency/article/000435.htm, visited on December 15, 2015.

mental limitations. Based upon the testimony of a vocational expert, the ALJ found that plaintiff was unable to do her past work. However, he also concluded that she was not disabled because she was able to do other jobs which exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

**1.   Agency Forms**

Plaintiff was born in 1977 and was almost 32 years old on the alleged onset date. (Tr. 132). She had worked in the past as a CNA in a nursing home, a dialysis technician, an emergency room technician and as an EMT. She completed three years of college in 2005. (Tr. 188-189).

Plaintiff reported that she usually spent about an hour a day doing very light housework with breaks. She took two naps a day. She made one simple meal for dinner and watched television. She alleged that pain, fatigue and neuropathy limited her ability to sit, stand, walk, reach and use her hands. Fatigue and depression limited her memory, concentration and social interaction. (Tr. 213-217).

**3.   Evidentiary Hearing**

Ms. Young was represented by an attorney at the evidentiary hearing on June 26, 2013. (Tr. 37).

Plaintiff's attorney objected to the "credibility" of Dr. Feinerman's report. (Tr. 41).

Ms. Young was 36 years old. She was 5'2" tall and weighed about 105 pounds. (Tr. 43). Plaintiff testified that she was unable to work because she was tired and in pain all the time. Going out in the sun caused migraine headaches. She had no strength in her hands and her "legs and bones hurt constantly." Her neck hurt and doing any lifting caused shooting pains in her shoulders. She had gotten sick with acute pancreatitis the previous June, and everything went downhill from there. She lost her insurance shortly thereafter and was unable to get medical treatment. (Tr. 52-53). When she had the pancreatitis attack, her weight dropped from 123 pound to 84 pounds. (Tr. 59).

She was taking a number of medications. She had side effects of nausea, dizziness, lightheadedness and sleepiness. (Tr. 61).

A vocational expert also testified. The ALJ asked him to assume a person who was able to do sedentary work, limited to occasional climbing of ladders, ropes and scaffolds, frequent overhead reaching with both arms, and no concentrated exposure to extreme heat or hazards. For mental limitations, the person was "able to understand, remember and carry out less than detailed short and simple instructions and could maintain concentration, persistence and pace for such tasks with no more than average production standards, and also could tolerate no contact with the general public." (Tr. 64-65). The VE testified that this person could not do plaintiff's past work, but she could do other jobs such as hand packer and assembler. (Tr. 65).

On cross examination, the VE testified that, if plaintiff were limited to only occasional handling and fingering, all sedentary, unskilled jobs would be precluded. (Tr. 66).

### 3. Medical Records

Plaintiff was diagnosed with lupus some time before the alleged date of onset of disability. In February 2009, Dr. Amar Sawar noted that she had systemic lupus erythematosus and common migraine, and that her migraines were "well controlled." (Tr. 348).

In August 2009, plaintiff told Dr. Sawar that she was having two migraines per month. Sensory exam was intact and she had no tenderness or swelling of the joints. Strength was 5/5 in all extremities. (Tr. 347). Plaintiff next saw Dr. Sawar in November 2010. She complained of neck pain radiating to both shoulders and tingling in both hands. She was not taking her medications because of the cost. On exam, she had full strength in all four extremities and sensation was intact. She had tenderness and swelling of the joints in her hands. (Tr. 346).

An MRI of the cervical spine done in November 2010 showed herniation of the discs at C5-6 and C6-7. (Tr. 331).

In January 2011, Dr. Sawar noted decreased sensation to pinprick in both feet and up the ankles. There was no tenderness or swelling in the joints. He diagnosed cervical herniation and recommended a nerve conduction study. (Tr. 344).

Nerve conduction studies and EMG were performed on January 31, 2011. The tests showed mild right peroneal mononeuropathy, no evidence of lumbosacral

radiculopathy, and no evidence of carpal tunnel syndrome or cervical radiculopathy. (Tr. 336).

In June 2011, Dr. Sawar noted full strength in all extremities, intact sensation and no tenderness or swelling of the joints. There was no spinal tenderness. (Tr. 350).

Dr. Adrian Feinerman performed a consultative physical exam on January 9, 2012. The exam was normal. (Tr. 379-389).

Harry J. Deppe, Ph.D., performed a consultative psychological exam on January 9, 2012. Plaintiff first denied any past drug use, but then stated that she had used methamphetamine in the past with the most recent use about five years prior. She was on probation for possession of methamphetamine. She had been treated for depression in the past, but was not currently in treatment or taking any psychotropic medication. Dr. Deppe concluded that her abilities to relate to others, to understand and follow simple directions, and to maintain attention for simple, repetitive tasks were intact. She had fair to good ability to withstand the pressures and stress of day-to-day work activities. His diagnoses were methamphetamine abuse, in remission, and major depression, single episode, in remission. (Tr. 390-395).

Ms. Young went to the emergency room for neck pain radiating to the left shoulder in January 2012. She said she had been referred to a pain clinic, but was unable to go "due to insurance problem." She had not been seen recently by a doctor. (Tr. 396).

Plaintiff was seen at the Family Healthcare Clinic in May 2012. She said she

had been unable to see Dr. Sawar or a pain management specialist because she had no insurance and no money. She was out of all medications. (Tr. 446-448). In October 2012, she was seen for depression. She was unable to afford a referral to a psychiatrist. She reported anxious/fearful thoughts, depressed mood, excessive worry, difficulty sleeping, fatigue, loss of appetite and paranoia. (Tr. 459-462). Dr. Michelle Jenkins prescribed Cymbalta. (Tr. 453).

A physician's assistant at Cape Spine and Neurosurgery saw plaintiff in May 2013 for neck pain and headache. On exam, the active range of motion of the neck was limited and plaintiff had pain over the cervical paraspinal muscles. She had 3/5 handgrip on the right and 4/5 handgrip on the left. There was hypoesthesia (reduced sensation) in the right C6 and C7 distribution. (Tr. 512-513).

In June 2013, an MRI of the cervical spine showed mild bulging of the C4-5 disc with mild encroachment on the thecal sac and central left neural foramina. There was moderate bulging of the C5-6 and C6-7 discs with mild to moderate foraminal stenosis. (Tr. 515).

4. **State Agency Consultant's RFC Assessment**

On January 23, 2012, Howard Tin, Psy.D., assessed plaintiff's mental RFC. He used an agency form (Form SSA-4734-F4-SUP) that is commonly used for this purpose in social security cases. (Tr. 418-421). This form is referred to as the Mental Residual Functional Capacity Assessment, or MRFCA. Section I of the form consists of a list of mental activities. The consultant is asked to set forth his "summary conclusions" by checking a box to rate the severity of limitation as to each activity. Dr. Tin checked the box for "moderately limited" for the following

activities:

- Ability to understand and remember detailed instructions;

- Ability to maintain attention and concentration for extended periods;

- Ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- Ability to work in coordination with or proximity to others without being distracted by them;

- Ability to interact appropriately with the general public;

- Ability to get along with coworkers without distracting them or exhibiting behavioral extremes.

In Section III of the form, the consultant is asked to explain his "summary conclusions in narrative form. Include any information which clarifies limitation or function." Dr. Tin wrote that plaintiff "has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." He also noted that she had "difficulty in interacting appropriately with the general public," but did not mention that he had also found her moderately limited in ability to work in coordination or proximity to others and to get along with coworkers.

A second state agency consultant, Donald Henson, Ph.D., affirmed Dr. Tin's assessment in March 2012. (Tr. 430-432).

## Analysis

Plaintiff correctly argues that the ALJ erred in failing to adequately consider all of the limitations found by Dr. Tin in the Mental RFC Assessment Form.

The ALJ stated that he gave the opinions of Drs. Tin and Henson "significant

weight." He specifically noted that they concluded that plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and to work in coordination or proximity with others. He did not note that they also found that she was moderately limited in her ability to get along with coworkers. See, Tr. 26.

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, at *2. The ALJ is required by 20 C.F.R. §§ 404.1527(f) and 416.927(f) to consider the state agency consultant's findings of fact about the nature and severity of the claimant's impairment as opinions of non-examining physicians; while the ALJ is not bound by the opinion, he may not ignore it either, but must consider it and explain the weight given to the opinion in his decision. See, *McKinzey v. Astrue*, 641 F.3d 884, 891(7th Cir. 2011). Here, the ALJ gave the state agency consultants' opinions "significant weight" and did not state that he rejected any part of their opinion.

Plaintiff argues that the hypothetical posed to the VE is deficient because it did not account for all of the moderate limitations found by Dr. Tin and affirmed by Dr. Henson. She points out that the ALJ did not include limitations in working in proximity to coworkers or in getting along with coworkers.[5]

The Commissioner argues that the ALJ was not required to treat Dr. Tin's checkmarks in Section I of the MRFC form as an opinion. In support, she cites

---

[5] Plaintiff has not raised an argument based on *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010).

*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010). *Smith* is from the Third Circuit, not the Seventh Circuit. She also cites two cases from district courts in Wisconsin. However, district court decisions "are not authoritative even within the rendering district." *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012).

The Court finds it disturbing that neither party cited *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), which is directly on point and is controlling. In *Yurt*, the Seventh Circuit rejected the Commissioner's position that the ALJ may ignore Part I of the MRFCA form and consider only the narrative statement in Part III. *Yurt*, 758 F.3d at 858-859. The Commissioner's argument is directly contrary to *Yurt*. *Yurt* was decided on July 10, 2014, well before the briefs were filed in this case. The Seventh circuit again rejected the Commissioner's present argument in *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015). *Varga* was decided on July 24, 2015, one week before defendant filed her brief in this case.

Further, the Commissioner advanced the identical argument, citing *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010), in *Sharon Johnson v. Commissioner*, Case No. 14-361-CJP.[6] Citing *Yurt*, this Court rejected the Commissioner's argument in a Memorandum and Order dated April 24, 2015.

*Yurt* and *Varga* explicitly reject the argument advanced by the Commissioner here. The Commissioner's attorneys should not continue to make that argument without acknowledging that it has been rejected by the Seventh Circuit and attempting to distinguish *Yurt* and *Varga*.

---

[6] Ms. Young's attorney did not represent the plaintiff in *Johnson*.

Page **13** of **15**

Under the binding precedents of *Yurt* and *Varga*, this Court must conclude that the ALJ failed to build "an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC." *Yurt,* 758 F.3d at 858-859. Therefore, this case must be remanded.

Plaintiff's point regarding the ALJ's consideration of her alleged limitations in using her hands is also well-taken. The ALJ gave "little weight" to Dr. Feinerman's opinion, but relied upon that opinion, in part, to conclude that Ms. Young had no manipulative limitations. See, Tr. 25. Tee VE testified that plaintiff would be unable to perform any unskilled sedentary work if she were limited to only occasional handling and fingering. (Tr. 66). Therefore, the ALJ's determination that she had no manipulative limitations is potentially dispositive. The ALJ fails to build the requisite logical bridge where he relies on evidence which "does not support the propositions for which it is cited." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Logically, a doctor's report that is given "little weight" cannot be used to negate other evidence indicating that plaintiff has manipulative limitations.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Young is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Kelly Young's application for

social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE:   December 17, 2015.


<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**